THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH SEXTON, Defendant-Appellant.

Fourth District No. 4—87—0096

Opinion filed November 25, 1987.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael M. McFatridge, State's Attorney, of Paris (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a jury trial, defendant was convicted of two counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(b)(1), 12—16(c)(1).) Defendant argues he was not proved guilty beyond a reasonable doubt and that the trial court erred in admitting: (1) the State's Attorney's testimony; (2) hearsay testimony under the corroborative complaint and treating physician's exceptions to the hearsay rule; and (3) a photograph of complainant's genital area. Defendant argues his due process rights to a fair trial were violated by the mentioning of a possible polygraph test and the prosecutor's closing argument.

We reverse and remand.

The complainant, defendant's 10-year-old niece, testified that she and her brother stayed at defendant's house the previous summer. While she was taking a bath, defendant entered the bathroom and touched her "private." He told her not to tell anyone and left. Defendant bothered her twice while she was on the couch. Her aunt was home on one occasion and gone on the other. The second time, her brother was in the bathroom. Defendant pulled down her pants, said he liked playing with her, and touched her "private with his private." Complainant stated that it hurt and caused bleeding. The third occasion consisted of the same acts as the first two.

Complainant's mother testified defendant is her brother-in-law. After the children returned home, she noticed a personality change in complainant. She and her other sister told complainant that it was illegal for anyone to have touched her. Complainant indicated that defendant had assaulted her.

Gary Wheat, a detective with the Paris police department, testified that on August 1, 1986, in the State's Attorney's office, he and the State's Attorney interviewed defendant. Wheat asked defendant to come to the office for an interview and told him that he was going to be charged. The State's Attorney, Michael McFatridge, did most of the talking. Defendant indicated that since he was going to be charged he might as well admit the offenses. He stated that he had fondled complainant while she was bathing. McFatridge asked defendant to give Wheat a complete statement and left.

Wheat further testified that defendant admitted two incidents during which he touched complainant's genitals with his hands and

penis. These events occurred while she was on the couch. Wheat believed defendant was over 40 years of age.

On cross-examination, Wheat stated that he had interviewed complainant twice about an unrelated matter. Carol Sexton, defendant's wife, brought complainant to the police station about the theft of a class ring. Wheat learned the complainant and her brother had taken the ring and lost it. During the first interview about the ring, complainant lied to him.

State's Attorney McFatridge testified that prior to his August 1, 1986, interview with defendant, he talked to Linda Chittick, an investigator for the Illinois Department of Children and Family Services (DCFS), and Wheat about the case. They had several discussions and determined the evidence was sufficient. Defendant would be charged regardless of whether he gave a statement. Part of the goal of the August 1 meeting was to obtain a confession. McFatridge told defendant he was the one who would charge him, make sentencing recommendations, and the State's Attorney's office would consider recommending probation if defendant would cooperate with the police. After defendant called his wife, he admitted fondling complainant.

At this point, it should be noted that this cause was prosecuted by an assistant State's Attorney of Edgar County. The record does not show any disqualification of McFatridge, State's Attorney of Edgar County. In response to defendant's pretrial discovery, McFatridge was listed as a potential witness. On cross-examination, McFatridge admitted that he had known the prosecutor for some time. As assistant State's Attorney, the prosecutor took general directions from him. McFatridge asked defendant to come into the office because all of the evidence pointed to defendant. He discussed the case with Wheat and Chittick, viewed videotapes, and reviewed medical records.

On redirect examination, McFatridge stated that his professional and social acquaintance with the prosecutor did not affect his testimony. As an officer of the court, he was sworn to uphold the law. He had a special duty to the county and State as a State's Attorney. One possible outcome of lying in testimony or in a pleading would be the loss of his license. He would not lie under oath and prided himself in running an honest office. He had talked to defendant because it was determined there was substantial evidence against defendant.

Dr. W. R. Elghammer, a pediatrician, testified that he regularly sees children who have been sexually abused. He examined complainant on July 7, 1986. Over defendant's objection, Elghammer testified that complainant told him that defendant had penetrated her vagina and attempted anal penetration. The court instructed the jury that

the evidence was admissible for the limited purpose of explaining the type of examination performed and not for the truth of the matter asserted.

Elghammer further testified that complainant's hymen was not intact and there was an irregular tearing. Her vaginal opening was four times normal size. In Elghammer's opinion, complainant's injury could not have been caused by anything other than penetration. A fall would have caused bruising and swelling rather than a tear. It was possible the injury occurred by insertion of a male penis. Elghammer further stated the injury occurred three to four weeks prior to July 7, 1986.

Chittick testified that she investigated the instant case. Defense counsel asked Chittick to relate the substance of a conversation that she had with Wheat. Chittick stated that she and Wheat discussed the possibility of setting up a polygraph examination.

Defendant's daughters and son testified that defendant did not have an opportunity to commit the offenses. They also testified that complainant had taken one of the daughters' class rings. Defendant's wife testified that she did not hear defendant go downstairs after he came to bed on any night that week. Complainant took two baths, and defendant did not enter the bathroom on either occasion.

Defendant testified in his own behalf, denying he touched complainant. He stated the conversation related by Wheat and McFatridge had not occurred.

■■ ■ Defendant argues he was not proved guilty beyond a reasonable doubt because he had an alibi, McFatridge's and Wheat's testimonies were unworthy of belief, complainant's testimony was not clear and convincing, and complainant had a motive to lie. A conviction for aggravated criminal sexual abuse or assault, where defendant denies the charge, will be upheld where the complainant's testimony is clear and convincing or it is corroborated by other evidence. (*In re B.J.S.* (1987), 151 Ill. App. 3d 1023, 503 N.E.2d 1198; *People ·v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.) The complainant's testimony need not be perfect to be clear and convincing. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.) The fact that a complainant cannot remember the dates and times of the alleged offenses does not render her testimony unclear. The ability to set dates is a question of the weight of the testimony. *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 502 N.E.2d 1263.

■ Here, the complainant's testimony was detailed and unwavering. We find that it was clear and convincing. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.) Additionally, it was corrobo-

rated by the complaint to her mother, medical testimony, and McFatridge's and Wheat's testimonies. The jury need not accept defendant's alibi. (*In re B.J.S.* (1987), 151 Ill. App. 3d 1023, 503 N.E.2d 1198; *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019; *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 502 N.E.2d 1263.) Also, the alibi witnesses were immediate family members and admitted defendant had opportunities to commit the alleged offenses.

▮ Defendant argues complainant had a motive to lie. We agree that complainant may have had a motive to testify falsely. She had been taken to the police station in connection with the theft of defendant's daughter's ring. However, the presence of a motive to lie does not render complainant's testimony unconvincing in and of itself. It is a factor to be considered in weighing the credibility of the witnesses. The evidence was sufficient to sustain the conviction.

▮ Defendant argues McFatridge's testimony reveals defendant's statement was part of an unsuccessful plea negotiation. Therefore, the trial court erred in admitting McFatridge's testimony about defendant's statement and the preliminary conversation. At trial, defendant denied the conversation, which he now alleges was a part of a plea negotiation, occurred. Defendant did not object on this basis below. However, if conversations are part of a plea negotiation, their admission is plain error. *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Cowherd* (1983), 114 Ill. App. 3d 894, 449 N.E.2d 589; *People v. Victory* (1981), 94 Ill. App. 3d 719, 419 N.E.2d 73.

▮▮ Rule 402(f) states that if a plea discussion does not result in a guilty plea, neither the discussion nor any resulting agreement shall be admissible against the defendant. (107 Ill. 2d R. 402(f).) The rule is a recognition of the significance of the negotiating process and encourages negotiation in criminal cases. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229.) To determine whether a plea negotiation took place, one must consider whether the defendant exhibited a subjective expectation that he was negotiating a plea and whether the defendant's subjective impression was reasonable after an evaluation of all of the objective circumstances. Each case turns on its own facts. Although no explicit language is necessary to initiate a plea negotiation, before a discussion may be characterized as plea related, it must contain indicia of the negotiation process. Among these indicia are a willingness of the defendant to plead guilty in exchange for concessions. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Tennin* (1984), 123 Ill. App. 3d 894, 463 N.E.2d 202.) Not all statements made in hope of a confession are necessarily plea negotia-

tions. *People v. Cowherd* (1983), 114 Ill. App. 3d 894, 449 N.E.2d 589; *People v. Victory* (1981), 94 Ill. App. 3d 719, 419 N.E.2d 73.

■ In the instant case, the discussion did not involve a promise of leniency in exchange for a plea, but an offer to "consider recommending probation" if the defendant cooperated. Thus, there was no negotiation process as defined in *Friedman, Cowherd,* and *Victory.* The offer to "go easy" in exchange for cooperation does not implicitly suggest a promise of leniency for a guilty plea. Therefore, we need not evaluate whether defendant's subjective expectation of a plea would be objectively reasonable. However, we note the defendant did not by his statements or actions at the time of discussion manifest a subjective belief that he was entering plea negotiations. He said, in essence, since you are going to charge me, I might as well talk. At trial, defendant denied the conversation occurred. Even if one accepted that defendant had a subjective expectation of a plea, it would not be reasonable under the instant circumstances.

■ Defendant next argues that McFatridge's statement to defendant may have made the jury conviction more likely because it underestimated the seriousness of the offense. It is improper for the prosecutor to argue sentencing to the jury. Mention of the sentence in *voir dire* is also error. (*People v. Neeley* (1974), 18 Ill. App. 3d 287, 309 N.E.2d 725.) However, here, the prosecutor did not argue or state sentencing alternatives. The statement was made by a witness and in passing. Defendant asks this court to speculate that prejudice occurred. We will not do so.

However, we believe that in context McFatridge's testimony about his investigation and closing argument based upon that testimony constituted reversible error. McFatridge testified on direct examination that he discussed the case with the police investigator and a DCFS investigator. After several discussions, he determined the evidence was sufficient to charge defendant. Therefore, defendant would be charged regardless of whether he gave a statement. Defendant did not object to this testimony. On cross-examination, in response to defendant's question about why the police had not talked to complainant's brother, McFatridge stated all of the evidence pointed to defendant. McFatridge stated he had also reviewed medical records and viewed a videotape prior to charging defendant. On redirect examination, McFatridge stated he prided himself in running an honest office, could lose his license if he lied in a pleading or in testimony, and his relationship with the assistant State's Attorney, who was prosecuting his case, would not affect his testimony.

Defendant argues this testimony was improper and prejudicial as

it in essence allowed the State's Attorney's office to state its opinion that defendant was guilty. We agree.

 It is improper for a prosecutor to testify that he reviewed police reports, talked to witnesses, and afterward recommended charging defendant. (*People v. Blissitt* (1973), 12 Ill. App. 3d 551, 299 N.E.2d 562.) In *Blissitt*, an assistant State's Attorney was called as a witness for the State. He testified over objection that he received a phone call from an officer investigating a killing. He talked about the facts of the case and afterward, he charged defendant. The court held the testimony was improper. It stated:

> "The testimony of the prosecutor was improper and constituted error. It is well settled that it is improper for a trial prosecutor to offer to the jury his belief that a defendant is guilty of the crime charged. [Citations.] If it is prejudicial error for a prosecutor to express an opinion before the jury as to defendant's guilt, in our judgment, it is even more improper and prejudicial for the State to offer a prosecutor's testimony that he had discussed the facts of an occurrence with the police and had recommended that the charge of murder be placed against the defendant. The highly prejudicial effect of such testimony seems obvious." (*People v. Blissitt* (1973), 12 Ill. App. 3d 551, 554, 299 N.E.2d 562, 564.)

(See also *People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368.) Essentially, testimony of this nature allows the prosecutor's office to place its opinion before the jury.

 Defendant did not object to the testimony and continued questioning the State's Attorney along the same lines. The issue was not raised in the post-trial motion. Normally, failure to raise an issue before the trial court or in a post-trial motion waives review of the issue. (*People v. Friesland* (1985), 109 Ill. 2d 369, 374, 488 N.E.2d 261, 262; *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872.) The reviewing court may review the error, however, where the evidence is close or the error affects the accused's substantial rights. (*People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872.) We will not apply the waiver rule in the instant case.

Credibility was a key issue. Defendant denied that he committed the offenses. Therefore, his veracity was contrasted with complainant's veracity. Under the circumstances presented here, defendant's veracity was also contrasted with the veracity and reputation of the State's Attorney and his office. The credibility of the State's Attorney's office was placed behind the charges. On direct examination, the State's Attorney testified that he was the person who would charge

an accused. After discussing the case with investigators, he determined the evidence was sufficient. The cross-examination and redirect examination further aggravated the initial error contained in the testimony. We note also that complainant had a motive to testify falsely. The jury's evaluation of the motive may have been different if the State's Attorney's office's opinion had not been placed before the jury.

The prejudice involved in detailing the investigation, stating the State's Attorney ran an honest office, and stating he could lose his license if he lied under oath or in a pleading is readily apparent. The entire examination forced the jury to choose between complainant's testimony, coupled with the State's Attorney's opinion of defendant's guilt and defendant's testimony. It constitutes plain error. This error was exacerbated by the prosecutor's rebuttal argument. In that argument, the prosecutor stated the State's Attorney only charges those people who he believes are guilty and his role is to be a "mini jury." A prosecutor's statement implying charges would not have been brought against a defendant unless the prosecutor thought he was guilty is improper and prejudicial error. *People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368.

We also find that the trial court erroneously admitted identification testimony. Complainant's mother testified that complainant told her defendant committed the offenses. Defendant filed a motion *in limine* to preclude identification of him and preclude admission of the substance of the offenses through complainant's mother's testimony. Defendant argues in this court that identification of him exceeded the scope of section 115—10 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.) Elghammer also testified that complainant stated defendant assaulted her.

The corroborative complaint provision allows hearsay testimony to be admitted when a child complains of being the victim of a sexual act. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.) The purpose of the legislation is to corroborate the fact that a child under 13 complained of sexual abuse to another person. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019; *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 481 N.E.2d 883.) The statute limits the testimony to the fact that a complaint was made. It is error to identify defendant as the perpetrator or give excessive details of the offense. *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019.

The State argues Elghammer's testimony was admissible under the treating physician exception to the hearsay rule. Illinois preserves the distinction between statements made to a treating physi-

cian and statements made to an examining physician. (See generally *People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564.) However, there is some doubt about whether a difference still exists between the admissibility of hearsay statements made to a treating physician and those made to an examining physician. *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321.

██ Even if the court assumes Elghammer was a treating physician, repetition of complainant's identification of defendant is erroneous. (*People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564; *People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321.) The identification would not relate to the cause of the injury. It would, thus, not contain the same indicia of reliability as statements necessary for treatment. (*People v. Taylor* (1987), 153 Ill. App. 3d 710, 506 N.E.2d 321.) The State argues any error in the admission of the identification testimony was harmless. Under the context presented here, we cannot agree. As noted earlier, credibility was the key issue. The jury's determination had already been swayed by the examination of the State's Attorney. The admission of hearsay identification statements increased the prejudicial effect of placing the State's Attorney's office's credibility behind the charge. The error in admitting complainant's mother's and Elghammer's identifications of defendant was not harmless.

██ ██ Defendant contends the photograph of complainant's genital area was improperly admitted. The argument has little merit. We will address it because it may arise again upon retrial. Photographs depicting victim's injuries are admissible if relevant to any issue in the case. Their gruesomeness or cumulative nature does not render them inadmissible. (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183; *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. Montague* (1986), 149 Ill. App. 3d 332, 500 N.E.2d 592.) Here, the photograph illustrated Elghammer's testimony. Its admission was proper.

Defendant also contends the prosecutor's closing argument denied him a fair trial. In rebuttal, the prosecutor stated the jurors had to send a message to sex offenders and, if the evidence was sufficient, convict defendant. This was necessary to protect the children. Defendant did not object to the argument. We find he waived any error. (*People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.) We have already noted the other objectionable part of the argument in conjunction with analyzing the error committed by placing the State's Attorney's office's credibility behind the charge. This portion of the argument will not recur on retrial. We note that a prosecutor may base his

closing arguments on evidence adduced at trial and reasonable inferences from it. (*People v. Escobedo* (1986), 151 Ill. App. 3d 69, 502 N.E.2d 1263.) He may urge fearless enforcement of the law. (*People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132.) However, it is improper for him to make statements calculated solely to inflame the jury. *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132.

■■ Finally, defendant argues the mention of a polygraph examination by Chittick was reversible error. We need not decide this issue. However, on retrial this information should not be placed before the jury. The results of a polygraph test are inadmissible. One may not state that one was given, offered to a defendant, or that defendant refused to take a polygraph test. *People v. Nicholls* (1970), 44 Ill. 2d 533, 256 N.E.2d 818; *People v. Eickhoff* (1984), 129 Ill. App. 3d 99, 471 N.E.2d 1066.

For the above reasons, we reverse the trial court and remand.

Reversed and remanded.

SPITZ, P.J., and GREEN, J., concur.